[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action brought in multiple counts seeking money damages and a permanent injunction, plaintiff, a condominium association, moves for a temporary injunction against defendant, successor declarant of the condominium, to restrain defendant from exercising development and special declarant's rights. The parties agree that the decision on the pending motion rests on whether or not those rights still vest in defendant or have expired. Necessarily implicated is an interpretation of key provisions of the condominium declaration and sections of the Common Interest Ownership Act, C.G.S. § 47-200, et. seq.
The facts are as follows:
The original developer of the condominium complex, known as Cantonbury Heights, Cantonbury Development Limited Partnership filed a declaration, dated December 17, 1986, establishing nine condominium units and common elements and reserving to itself a variety of development and special declarant rights, including the right to create up to 132 additional condominium units. Over the years the declaration was amended for the purpose of creating additional condominium units. On December 30, 1987, the original declarant transferred ownership of all special declarant rights to Cantonbury Heights Associates. In the spring of 1994 sixty-seven condominiums had been built and all but two of them sold. On April 7, 1994, financial difficulties forced Cantonbury Heights Associates to assign all of its development and special declarant rights and ownership of the two unsold units to its financing institution, Mechanics Savings Bank (hereinafter Mechanics) which in the assignment declared that "it intends to hold said Special Declarant Rights solely for transfer to another person". Mechanics sold the last of the two remaining units in February 1995 and transferred the special declarant rights to General Financial Services, Inc. on July 30, 1996. On July 13, 1999, General Financial transferred its ownership of those rights to defendant Local Land Development, LLC (hereinafter referred to as "LLD")
On October 20, 1999, the Canton Zoning Commission approved defendant LLD's application for a special exception and site plan modification in order to construct sixty-three new condominium units in the areas CT Page 3262 designated as Phase III and Phase IV. LLD engaged contractors, including defendant Supreme Industries, Inc. (hereinafter Supreme), to begin clearing activities, and in January 2001 Supreme started the initial site work. In March and May 2001, the Connecticut Department of Environmental Protection issued a notice of violation and the Canton Inland Wetlands and Watercourses Agency issued a cease and desist order alleging that LLD had failed to properly implement certain erosion and sediment controls and had not observed the proper wetlands buffer distances. LLD has since corrected all the violations and brought the project into compliance with the orders of these agencies.
The plaintiff initiated this action by verified complaint on October 3, 2001 and obtained an order to show cause on that date why a temporary injunction should not issue against the defendants LLD and Supreme, and its agents from entering the land and asserting or exercising any development or special declarant rights concerning the land.
Section 8.1 of Article VIII of the declaration reserves the following development rights to the declarant:
 (a) The right to add Units and Limited Common Elements in the location shown as "Development Rights Reserved in This Area" on the survey and plans."
Section 8.2 limits the development rights as follows:
 (a) The Development Rights may be exercised at any time, but not more than twenty-one years after the recording of the initial Declaration;
 (b) Not more than the total of 132 additional units may be created under the Developmental Rights;
 (c) All buildings and improvements constructed under the Development Rights will be architecturally consistent with the buildings and improvements constructed pursuant to the Declaration as initially recorded as follows . . .
 (d) All Units and Common Elements created pursuant to the Development Rights will be restricted to residential use in the same manner and to the same extent as the units created under the initial Declaration.
Section 8.3 provides for the phasing of development rights with no assurance as to where the declarant will exercise its development rights CT Page 3263 and the order that such portions or all of the areas will be developed.
Section 8.4 defines special declarant rights as rights reserved for the benefit of the declarant:
 (a) to complete improvements indicated on Survey and Plans filed with the Declaration . . .;
 (b) exercised any Development Right reserved in this Declaration;
 (c) to maintain sales offices, management offices, signs advertising the common interest community, and model;
 (d) to use easements through the Common Elements for the purpose of making improvements within the Common Interest Community; and
 (e) to construct underground utility lines, pipes, wires, ducts, conduits and other facilities in addition to those already shown on recorded plans . . .
Another, misnumbered, Section 8.4 reserves to the declarant the right to perform warranty work, repairs and construction work, to store material in secure areas, the right of access thereto until completion of such work. That section also provides that the declarant shall have an easement through the common elements as may be reasonably necessary for the purpose of discharging the declarant's obligations or exercising special declarant rights whether arising under the Act or reserved in the declaration.
Finally, the most controversial provision of the declaration is Section 8.9 which provides:
 Unless sooner terminated by a recorded instrument executed by the Declarant, any Special Declarant Right may be exercised by the Declarant so long as the Declarant is obligated under any warranty or obligation, owns any Units or any Security Interest on any Units, or for twenty-one years after recording, whichever is sooner.
On this motion before this court for a temporary injunction, the court recognizes that the purpose of the motion is to preserve the status quo of the parties until a full hearing is held on the merits. GriffinHospital v. Commission on Hospitals and Healthcare, 196 451, 457 (1985). The determination of whether to grant a temporary injunction lies within CT Page 3264 the sound discretion of the court. Id. at 459. In exercising that discretion, the court can balance the equities, taking into account such factors as the likelihood of the plaintiff prevailing on the merits of its claim, irreparability of prospective harm to the plaintiff, the adequacy of a remedy at law, and weighing the hardships flowing from issuing or denying the injunction. Id. at 458-459, Olcott v. Pendleton, supra at 295; Advest, Inc. v. Wachtel, 235 Conn. 559, 562-63 (1995).
In this case the plaintiff has clearly established irreparable harm and no adequate remedy at law if the defendant is allowed to continue its site work and to construct the condominiums. The primary standard coming into play is whether the plaintiff is likely to prevail on the merits of this case.
Turning to the merits of the case, the primary issue is whether the special declarant rights, which include development rights, still vest in the defendant or whether they have expired pursuant to Section 8.9 of the declaration, quoted above. That section provides that the special declarant rights may be exercised by the declarant "so long as the Declarant is obligated under any warranty or obligation, owns any units or any security interest on any units, or for twenty-one years after recording the Declaration, whichever is sooner." The parties agree that at this time defendant owns no units, nor has any security interest in any units, nor is obligation under any warranties. The central issue is whether "the Declarant is obligated under any . . . obligation".
An examination of the Common Interest Ownership Act, C.G.S. §§ 47-200, et. seq. (hereinafter the "Act") reveals that the defendant, LLD, does have obligations under that Act. Specifically, Section 47-246 (e)(2) provides:
 A successor to any special declarant right . . . is subject to the obligations and liabilities imposed by this chapter or the declaration: (A) On a declarant which relate to the successor's exercise or non-exercise of special declarant rights;
Since special declarant rights include development rights, and since the original declarant and each successor has held development rights to a portion of Cantonbury Heights designated as Phases III and IV, then under Section 47-246 (e)(2) a succeeding declarant, as the defendant, has the obligations imposed by the Act.
Those obligations include the obligation to pay taxes on any portion of the common elements for which development rights have been reserved. In that regard, Section 47-204 (c) provides: CT Page 3265
 Any portion of the common elements for which the declarant has reserved any development rights shall be separately taxed and assessed against the declarant in a manner provided by law.
Declarant is further obligated by that Act for all expenses in connection with the real property subject to development rights.
Section 47-249 (b) provides:
 In addition to the liability a declarant has as a unit owner under this chapter, the declarant alone is liable for all expenses in connection with real property subject to development rights. No other unit owner and no other portion of the common interest community is subject to a claim for payment of those expenses.
Those expenses include cost of maintenance and insurance on the property which the defendant claims it has paid.
Finally, in the event that the defendant fails to properly insure the property, it is liable for its torts in connection with the common interest property which it has the responsibility to maintain. Section 47-253 (a) provides:
 Neither the association nor any unit owner except the declarant is liable for the declarant's torts in connection with any part of the common interest community which the declarant has the responsibility to maintain.
Plaintiff, however, contends that the "obligation" referred to in Section 8.9 of the declaration does not include obligations such as to pay taxes or to maintain and insure the property under the Act. Rather, it contends in its brief, "The obligations to which this language refers is an obligation to the unit owners of a condominium." Plaintiff bases this contention upon the claim that Section 47-246 (e)(2) mirrors Section 3-104 of the Uniform Common Interest Ownership Act, the comment to which section refers to obligations and liabilities to unit owners. Plaintiff also refers to a note entitled "Special Declarant Rights and Obligations Following Foreclosure on Condominium Development" in 25 William and Mary Law Review 463, 478 which states that under Section 3-104 of the Uniform Act, a declarant who succeeds to special declarant rights "becomes liableto unit owners for anything except the developer's misrepresentations, CT Page 3266 breaches of warranty, breaches of fiduciary duty and obligations resulting from the developer's acts after the transfer." (Emphasis added).
This contention is without merit. What matters are not comments to the model act or notes in law reviews, but the precise language in the declaration. The wording of Section 8.9 does not qualify declarant's "obligation" by stating the obligation must be to unit owners.
The plaintiff further argues that Section 8.9 "by including the word obligation in conjunction with the word warranty, it is logical that the intended purpose of the language is to allow a Declarant to exercise a Special Declarant Right so long as a Declarant is under an obligation to the unit owners." The short and complete answer to this contention is that the language in Section 8.9 is not conjunctive but disjunctive. The word "or" not "and" appears between warranty and obligation. Thus, while the successor declarant may not have any obligation under any warranty, declarant rights may still continue as long as the declarant has some other obligation.
The plaintiff also contends that, "Once a Declarant, such as LLD, fails to satisfy one of the conditions set forth in Section 8.9 of the Declaration, the right to exercise any Special Declarant Rights lapses." It argues that when Mechanics conveyed the last unit it owned as a declarant of Cantonbury Heights in 1995 and any warranties on those sales expired, Mechanics ceased to satisfy a condition prescribed in Section 8.9 of the Declaration. However, nothing in the language of Section 8.9 of the Declaration supports this interpretation. The language of that section clearly provides that the special declarant rights continue as long as any of the conditions stated continue: namely the declarant is obligated under warranty, or owns a unit or a security interest in the unit, or is obligated on any other "obligation".
Moreover, the plaintiff's interpretation violates a clear provision in the declaration at Section 8.3 allowing the declarant to construct the condominium in phases.
It is also contrary to the practice of developers to construct units in stages: namely building the units section by section, pausing until the units in each section are sold and then proceeding to successively construct additional units by sections. During those pauses in construction the declarant's special declarant rights are protected because it still has tax and maintenance obligations under §§ 47-204
(c)-249(b) and 253(a). The declarant reserves his development rights during periods of economic hardship and can safely proceed to construct the project in stages as allowed by Section 8.3 of the declaration. If CT Page 3267 the declarant still owns units to be sold, however, the special declarant rights which it needs in order to sell the units are protected. Once the last unit is sold the declarant still has warranty obligations on that unit and its special declarant rights continue. Once the last warranty expires and the declarant no longer has any unexercised development rights, the special declarant rights expire. This assures a smooth transition from the development and construction phase of a condominium through sale of the final units and the termination of warranties. It is important that the special declarant rights continue until the last warranty on the last unit expires so that the declarant has the ability to sell all the units, and can access the property and exercise easement rights in order to satisfy its obligations under any warranty.
Finally, plaintiff points to the language in the assignment of special declarant and development rights to Mechanics Savings Bank that provides: "Pursuant to Conn. Gen. Stat. § 47-246 (e)(4) Assignee hereby declares that it intends to hold said Special Declarant Rights solely for transfer to another person." Plaintiff argues that language in the assignment not only limited Mechanics right to exercise special declarant rights, but terminate those rights. Consequently, plaintiff argues, Mechanics assignment of development rights to General Financial Services which in turn assigned them to defendant LLD, could not convey development rights which lapsed with Mechanics.
Section 7-246 (e)(4) provides that a successor to declarant's rights may declare its intention to hold those rights solely for transfer to another person and, by so declaring, the successor is subject to limited liability as a declarant. However, that section does not terminate the declarant's rights or prohibit the successor from assigning them to anyone else who still has the right to exercise them.
Based on the foregoing analysis, the court concludes that plaintiff cannot prevail on the merits on its claim for a permanent injunction and therefore denies plaintiff's motion for a temporary injunction.
 __________________________ Robert Satter Judge Trial Referee